SHANE A. REED (158382)
LAW OFFICE OF SHANE A. REED, P.C.
P.O. Box 452
Jacksonville, Oregon 97530
Telephone: (541)899-1085
Facsimile: (541)899-1126
shanereed@shanereedlaw.com

Attorney for Plaintiff,
STAN BOERBAITZ, dba LAWLINKS U.S.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STAN BOERBAITZ, dba LAWLINKS U.S.,<br><br>Plaintiff,<br><br>vs.<br><br>ABACUS DATA SYSTEMS, INCORPORATED, and DOES 1-21,<br><br>Defendants. | CASE NO.: **'15CV2467 LAB MDD**<br><br>COMPLAINT FOR:<br><br>(I) COPYRIGHT INFRINGEMENT<br>(II) CONTRIBUTORY COPYRIGHT INFRINGEMENT<br>(III) VICARIOUS COPYRIGHT INFRINGEMENT<br>(IV) BREACH OF CONTRACT<br>(V) QUANTUM MERUIT<br><br>JURY TRIAL DEMANDED |

Plaintiff alleges:

## INTRODUCTION

1. This is an action by Plaintiff STAN BOERBAITZ, dba LAWLINKS U.S. ("BOERBAITZ" and "Plaintiff"), to recover damages arising out of copyright infringements by ABACUS DATA SYSTEMS, INCORPORATED ("ABACUS") and DOES 1-21 (collectively "Defendants"), of BOERBAITZ's legal codes- and rules-based timelines, computer instructions/scripts (aka, Court/Procedural Timelines Software Automation/TXT 640, et seq., "RULES," "RULE," "RULE set(s)," hereinafter), to enjoin ABACUS from future infringements, and to recover damages caused by and arising out of said infringements, injuries to BOERBAITZ's commercial reputation and goodwill, ABACUS's illicit intangible

////

gain in enhanced goodwill by purporting to be the owner of BOERBAITZ's RULES, and the related claims of breach of contract and quantum meruit.

2. At all times relevant, BOERBAITZ owned the copyrights and derivative copyrights to his RULES, and currently holds the copyright registrations and pending copyright registrations to his RULES.

3. On December 1, 1998, ABACUS and BOERBAITZ entered into an agreement whereby ABACUS agreed to pay royalty commissions, as well as certain other up front fees per-updated and per-newly-created RULES, to BOERBAITZ to use and sell BOERBAITZ's RULES, which included RULES which he created and to which he acquired original copyrights as well as RULES to which he acquired derivative copyrights.

4. All of BOERBAITZ's said RULES were and are used in conjunction and concert with ABACUS's legal-related software product called AbacusLaw.

5. On or about December 1, 1998, BOERBAITZ also began working as an independent sales representative, whereby ABACUS agreed to pay BOERBAITZ a sales commission based on his sales of any AbacusLaw programs and related products to customers.

6. For an unknown period of years stemming back to at least September 2013, unbeknownst to BOERBAITZ, ABACUS had been discounting and gifting BOERBAITZ's RULES without his authorization and without paying him the agreed-upon royalty commissions, despite the repeated assurances of ABACUS, which was that his royalty commissions would be paid based on the full purchase price of his RULES, regardless of whether or not they were discounted or gifted in connection with ABACUS's VIP 36 and any other applicable AbacusLaw plans/packages.

7. When ABACUS's unauthorized discounting, gifting, and non-payments regarding BOERBAITZ's RULES came to his attention on or about October 6, 2014, BOERBAITZ made repeated requests of ABACUS for an accounting and for payment of his agreed-upon royalty commissions.

////

8. On October 16, 2014, with effect from October 15, 2014, ABACUS terminated any and all agreements with BOERBAITZ, thus terminating ABACUS's rights to sell or otherwise use BOERBAITZ's RULES after that date.

9. Prior to or after October 15, 2014, ABACUS has never had authority from BOERBAITZ to add to, modify, or update BOERBAITZ's RULES.

10. After October 15, 2014, ABACUS has used, sold, discounted, gifted, distributed, reproduced, updated, and/or modified BOERBAITZ's RULES with impunity in spite of the explicit global termination of any and all agreements between BOERBAITZ and ABACUS on said date.

11. As a result of such continued infringement, the only remedy available to BOERBAITZ is to file this action against ABACUS for copyright infringement, contributory copyright infringement, vicarious copyright infringement, injuries to BOERBAITZ's commercial reputation and goodwill, ABACUS's illicit intangible gain in enhanced goodwill by purporting to be the owner of BOERBAITZ's RULES, and the claims of breach of contract and quantum meruit.

## THE PARTIES

12. Defendant ABACUS is a California corporation with its principal place of business located at 9191 Towne Centre Drive, Suite 180, San Diego, California, 92122.

13. ABACUS claims to having 250,000 customers worldwide, who are users of ABACUS's software program called AbacusLaw, which may or may not utilize BOERBAITZ's RULES, as such depends on customers' determination on whether or not to purchase and/or use his RULES in connection with the sale of, or license to use, AbacusLaw.

14. At all times relevant, ABACUS's CEO and the two sole stock-holders/co-owners were agents and/or representatives of ABACUS, and in doing the things herein mentioned, were acting in the course and scope of the authority of said agency and/or representation of ABACUS.

15. The true names of Defendants sued herein as Does 1-21 are unknown to Plaintiff BOERBAITZ. If necessary, BOERBAITZ will seek leave of court to amend this

Complaint to state their true names and capacities when and if they can be ascertained. BOERBAITZ is informed, and believes, and based thereon alleges, that DOES 1-21 should also be subject to the relief requested herein.

**JURISDICTION**

16. This Court has subject matter jurisdiction over BOERBAITZ's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101, *et. seq.*, and 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has supplemental jurisdiction over BOERBAITZ's breach of contract and quantum meruit claims, and injuries to BOERBAITZ's commercial reputation and goodwill, because such claims are so related to BOERBAITZ's claims arising under Federal Law that they form part of the same case or controversy and derive from the same nucleus of operative facts.

18. This Court has jurisdiction over ABACUS because at all times relevant, ABACUS was and is a California corporation located in San Diego County, having:

    a.) engaged in soliciting, transacting, and doing business;

    b.) infringed BOERBAITZ's copyright;

    c.) breached its contracts with BOERBAITZ; and

    d.) caused the damages alleged herein, including injuries to BOERBAITZ's commercial reputation and goodwill,

all within the State of California.

19. Moreover, jurisdiction is also proper in that at all times relevant BOERBAITZ and ABACUS resided in San Diego County.

**VENUE**

20. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) on either of two independent grounds, in that at all times relevant (1) both ABACUS and BOERBAITZ resided, and continue to reside, in San Diego County; or (2) a substantial part of the events or omissions giving rise to BOERBAITZ's claims herein occurred in San Diego County.

## BACKGROUND and GENERAL ALLEGATIONS

21. Beginning December 1, 1998, BOERBAITZ became an independent contractor, and creator, author, vendor, and supplier of his RULES over the next 16 years to ABACUS and its customers, and certain custom and other RULE sets directly to his clients, and all of BOERBAITZ's RULES were and are used in conjunction and in concert with ABACUS's legal-related software product called AbacusLaw.

22. On December 1, 1998, ABACUS and BOERBAITZ entered into an agreement whereby ABACUS agreed to pay royalty commissions, as well as certain other up front fees per-updated and per-newly-created RULES, to BOERBAITZ to use and sell BOERBAITZ's RULES, which included RULES which he created and to which he acquired original copyrights as well as RULES to which he acquired derivative copyrights.

23. During this same general time period, BOERBAITZ concurrently acted in the capacities of independent contractor both as a (A) sales representative selling AbacusLaw to customers, and (B) trainer and consultant for AbacusLaw users.

24. On multiple occasions prior to October 16, 2014, ABACUS's two sole stockholders/co-owners recognized and acknowledged BOERBAITZ as being the author of his RULES, to the extent that one of the sole stockholders/co-owners (who was and is ABACUS's chief programmer) informed BOERBAITZ that ABACUS would be programming and crediting the names of "Stan Boerbaitz and LawLinks U.S." into AbacusLaw's software to publicize and display that BOERBAITZ is the author of the RULES.

25. ABACUS's other sole stock-holder/co-owner (who is a law school graduate and presumed to understand legal terms of art) has admitted on numerous occasions that the monies ABACUS paid BOERBAITZ on the sale and use of BOERBAITZ's RULES were "royalties," such as in this excerpt from a July 7, 2011 e-mail to BOERBAITZ:

> ". . . [L]et's raise your *royalties* on rules. Here's my new proposal for going forward.: 25% *royalty* (instead of 20%) on all actual rules revenue (which I guarantee will grow from here)." (*Italics added.*)

////

26. In or about September 2006, ABACUS terminated any further training that BOERBAITZ had offered and previously performed in the capacity of an independent contractor for ABACUS; however, BOERBAITZ continued to act in the capacity of an independent contractor, creator, vendor, and provider of his RULES to ABACUS and its customers, and as a consultant to ABACUS's customers.

27. BOERBAITZ also continued in the capacity of independent sales representative and sold AbacusLaw by way of one- and three-year VIP Plans (i.e., licenses sold to ABACUS's customers to use AbacusLaw for a set period of time) and other AbacusLaw packages to customers.

28. On October 16, 2014, with effect from October 15, 2014, ABACUS's CEO terminated any and all agreements between ABACUS and BOERBAITZ, thus terminating ABACUS's rights to sell or otherwise use BOERBAITZ's RULES after that date, as follows:

> "This email shall serve as formal notice that effective 10/15/14 any and all verbal and written agreements between Judd Kessler, Abacus Data Systems, Inc., herefoth ("Company") or any executive or representative of the Company, have been terminated."

29. In spite of said termination of all agreements, since October 16, 2014, and continuing to the present, BOERBAITZ believes that ABACUS has sold, used, discounted, gifted, distributed, reproduced, updated, and/or modified, and has infringed, BOERBAITZ's RULES, such that BOERBAITZ has no adequate remedy at law for ABACUS's wrongful conduct because, among other things:

    a) BOERBAITZ's RULES are unique and valuable assets whose market value is difficult to assess;

    b) ABACUS's infringement harm to BOERBAITZ is such that BOERBAITZ could not be made whole solely by any monetary award; and

    c) ABACUS's wrongful conduct and the resulting damages to BOERBAITZ are continuing.

////

# I.

## BOERBAITZ's FIRST CAUSE OF ACTION,
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501, et seq.)

30. In a March 2, 2015 correspondence attached to a March 3, 2015 e-mail to BOERBAITZ, ABACUS's CEO memorialized and acknowledged that ABACUS had continued to sell and otherwise use BOERBAITZ's RULES; that ABACUS had no intention to cease selling or otherwise using BOERBAITZ's RULES; and that ABACUS "hence will continue to update rules as [sic] it sees fit."

31. BOERBAITZ never authorized ABACUS to update or modify his RULES, and any such updates or modifications made by ABACUS to BOERBAITZ's RULES were and are unauthorized derivative works that ABACUS does not own, and that ABACUS has no legal right to use, sell, discount, gift, distribute, reproduce, update, and/or modify in any respect.

32. Further, in this same March 2, 2015 correspondence, ABACUS's CEO recanted her previous admission and no longer recognized BOERBAITZ's RULES as being his products that ABACUS would have to purchase in order to use/sell, taking the untenable position that BOERBAITZ did not own his RULES because the creation and updating of his RULES lacked any originality or creativity, as follows:

> "As a vendor, you were paid to gather current (or up to date) information from public sources (such as court websites) related to ruled [sic] governing legal practice and to provide the pertinent updates to Abacus. There was nothing original or creative about the work you did to gather this information, as such there is [sic] no intellectual property rights that you could have possibly acquired by performing such a ministerial task."

33. Contrary to ABACUS's CEO's assertion, BOERBAITZ's creation, authorship, updating, and/or modifying of his original and derivative RULES required much more than the legally-required originality and modicum of creativity, necessitating both a higher understanding of the law and an in-depth knowledge of AbacusLaw and writing instructions/scripts so as to enable BOERBAITZ's expert selection, coordination, or arrangement of the legal codes, deadlines, and procedural data in such a way that the resulting

work as a whole constituted an original work of authorship, which was then input into the program/computers, a process which entails the following complicated and judgment-reliant steps:

    a. developing a code- and rule-based set of timelines/scripts to instruct the software/computer and other computing devices regarding:

        1) "what-if" and secondary-option time contingencies;

        2) date- and time-coding;

        3) enabling the operator to attach and encode auto-fill documents;

        4) enabling the computer and/or operator to delineate between and act on county-, state-, local-, federal-, and law firm-specific customizations;

        5) auto-populating law firms' calendaring systems and event-date-dependent task lists; and

        6) other miscellaneous calendaring and document-processing automation and functions;

    b. verifying the workability and viability of the RULES within varied computer and legal systems, and customers' law practices;

    c. researching, updating, and implementing legislative and court-directed changes based on dates of applicability;

    d. gathering and implementing specific input and feed-back from multiple-hundreds of lawyers, court clerks, law clerks, judicial assistants, programmers, sales personnel, office managers, and law office and court IT professionals over a period of time exceeding 16 years;

    e. locating then scrutinizing the sources of state, county, local, and federal rules, codes of civil procedure, and any other applicable codes to extract all deadlines mandated within each of the state, county, local, and federal jurisdictions;

    f. making manual flowcharts of such deadlines for each separate legal procedure within the greater civil procedure and other applicable codes' flowcharts to reflect the deadlines related to the filing of the lawsuit, then each separate method of the discovery process, motions practice, and pre- and post-trial practice;

    g. consulting with court and/or law office personnel to ensure the accuracy of the flowcharts;

    h. updating of the RULES, when required, by making the applicable changes manually, entering any changes into the RULE sets in AbacusLaw, then printing the updated RULES report;

////

      i.     adding special folders within AbacusLaw for the new or updated RULE sets;

      j.     entering each of the individual deadline flowcharts into the program folders;

      k.     utilizing a high level of knowledge and understanding of local, state, federal, and specialized legal procedure and the law in tandem with experience and expert-level skills in drafting computer scripts and instructions to assure that the RULES accurately and expeditiously perform the tasks described in "a. - 1) through 6), above"; and

      l.     serving as a liaison between ABACUS and its customers and aiding and training the technical support and sales staff at ABACUS gratuitously on countless occasions over the 16-year span, BOERBAITZ being the only person qualified in the makeup and application of the RULES, all of which resulted in BOERBAITZ possessing a superior paradigm and skill-set in creating and updating the RULES, and in identifying, resolving, and effectively scripting/encoding solutions regarding general and specific RULE set idiosyncracies and problems/limitations.

34. At all times relevant, ABACUS has continued to act without authorization in using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying BOERBAITZ's RULES based on its blatantly false and specious premise that all BOERBAITZ did to create and then update his RULES was to research and copy various code sections and statutes.

35. ABACUS's post-October 15, 2014 attempts to update and modify BOERBAITZ's RULES – and its post- October 15, 2014 sales/release of one or more RULE sets and/or updated RULE sets to customers that purport to be updated to comply with changes in the law but which do not – likely resulted in lesser-quality and substandard products, thus injuring BOERBAITZ's commercial reputation and goodwill that he accumulated through 16 years of high-quality workmanship in the creation and maintenance of his RULES.

36. Further, through ABACUS's post-October 15, 2014 use, sales, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES, ABACUS not only received illicit profits but also an intangible gain in enhanced goodwill by purporting to be the owner of BOERBAITZ's RULES.

////

37. At all times relevant, ABACUS's two sole stock-holders/co-owners and CEO were aware

    a)    of the general processes involved in BOERBAITZ's creating and updating his RULES described above;

    b)    that the RULES belonged to BOERBAITZ;

    c)    that after October 15, 2014, ABACUS no longer had, nor has, permission to exploit BOERBAITZ's RULES in any respect; and

    d)    that after October 15, 2014, ABACUS's unauthorized conduct of using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying BOERBAITZ's RULES constitutes copyright infringements,

such that ABACUS's above-stated rationale for continuing to engage in such wrongful conduct is feigned ignorance of the facts, and a weak, baseless, and unsubstantiated ruse.

38. Prior to October 16, 2014, ABACUS had earned an estimated average of $230,000 gross annually during the preceding six years from the sale of BOERBAITZ's RULES, and after October 16, 2014, ABACUS's gross annual earnings stemming out of its continued and unauthorized use, sales, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES will likely exceed $230,000. In spite of these earnings, on October 15, 2014 ABACUS's CEO reported to BOERBAITZ that ABACUS had been losing money on the sale of his RULES.

39. After the date of October 16, 2014 and accruing until the date ABACUS ceases using, selling, discounting, gifting, distribute, reproducing, updating, and/or modifying BOERBAITZ's RULES, ABACUS is liable to BOERBAITZ for copyright infringement under 17 U.S.C. § 501, *et seq.*, for any and all of BOERBAITZ's actual losses and damages; ABACUS's additional profits pursuant to 17 U.S.C. § 504(b), *et seq.*; ABACUS's unjust enrichment; damages due to injury that ABACUS caused to BOERBAITZ's commercial reputation and goodwill; and ABACUS's illicit intangible gain in enhanced goodwill, arising out of ABACUS's wrongful conduct.

## II.
## BOERBAITZ's SECOND CAUSE OF ACTION,
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

40. BOERBAITZ repeats, realleges, and incorporates herein by this reference each and every allegation set forth in paragraphs 1-39.

41. Numerous individuals and entities directly infringed BOERBAITZ's copyrights in his RULES.

42. ABACUS induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to reproduce and distribute BOERBAITZ's RULES after October 15, 2014.

43. At all times relevant, ABACUS had, and continues to have, knowledge that its acts constitute copyright infringements of BOERBAITZ's RULES.

44. ABACUS's conduct and acts, as alleged above in this Complaint, constitute contributory copyright infringement.

45. From the date of October 16, 2014 and accruing until the date ABACUS ceases contributing to the unauthorized using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES, ABACUS is liable to BOERBAITZ for contributory copyright infringement under 17 U.S.C. § 501, *et. seq.,* for any and all of BOERBAITZ's actual losses and damages; ABACUS's additional profits pursuant to U.S.C. § 504(b), *et seq.*; ABACUS's unjust enrichment; and damages due to injury that ABACUS caused to BOERBAITZ's commercial reputation and goodwill; and recovery of ABACUS's illicit intangible gain in enhanced goodwill, arising out of ABACUS's wrongful conduct.

## III.
## BOERBAITZ's THIRD CAUSE OF ACTION,
## VICARIOUS COPYRIGHT INFRINGEMENT

46. BOERBAITZ repeats, realleges, and incorporates herein by this reference each and every allegation set forth in paragraphs 1-39.

47. Numerous individuals and entities directly infringed BOERBAITZ's copyrights in his RULES.

48. ABACUS had the right and ability to control the infringing acts of the individuals or entities who directly infringed BOERBAITZ's copyrights in his RULES.

49. ABACUS directly benefitted financially from the infringing activities of the individuals and entities who after October 15, 2014 directly infringed BOERBAITZ's copyrights in his RULES.

50. ABACUS's conduct and acts, as alleged above in this Complaint, constitute vicarious copyright infringement.

51. From the date of October 16, 2014 and accruing until the date ABACUS ceases its vicarious copyright infringement resulting from the unauthorized and vicarious using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES, ABACUS is liable to BOERBAITZ for vicarious copyright infringement under 17 U.S.C. § 501, *et. seq.*, for any and all of BOERBAITZ's actual losses and damages; ABACUS's additional profits pursuant to U.S.C. § 504(b), *et seq.*; ABACUS's unjust enrichment; damages due to injury that ABACUS caused to BOERBAITZ's commercial reputation and goodwill; and recovery of ABACUS's illicit intangible gain in enhanced goodwill, arising out of ABACUS's wrongful conduct.

### IV.
### BOERBAITZ's FOURTH CAUSE OF ACTION,
### BREACH OF CONTRACT

52. BOERBAITZ repeats, realleges, and incorporates herein by this reference each and every allegation set forth in paragraphs 1-39.

53. In an October 6, 2014 e-mail to BOERBAITZ, one of ABACUS's sole stockholders/co-owners admitted that ABACUS and BOERBAITZ had an agreement in place whereby ABACUS was required to pay BOERBAITZ his full royalty commissions on his RULES, even when his RULES were gifted within a "bundle" at no charge in connection with ABACUS's VIP 36 and any other applicable AbacusLaw plans/packages, as follows:

"Yes Stan (BOERBAITZ), that was our agreement. All distribution of rules should be commissionable at the regular price even if we include them at no charge in a bundle."

54. In an October 10, 2014 e-mail to BOERBAITZ, ABACUS's CEO admitted that ABACUS had been discounting and gifting BOERBAITZ's RULES to ABACUS's customers without paying the full amount of royalty commissions to BOERBAITZ for a period of years, as follows: "Rules have been included at no charge and discount far before I joined Abacus.", whereas said CEO joined ABACUS in that capacity in or about September, 2013.

55. Accordingly, once BOERBAITZ has received and reviewed an accurate and complete accounting from ABACUS (which he has repeatedly requested), BOERBAITZ reserves the right to amend this Complaint to include BOERBAITZ's unpaid earned and/or owed royalty commissions that take into account ABACUS's unauthorized discounting and/or gifting of BOERBAITZ's RULES in connection with ABACUS's VIP 36 and any other applicable AbacusLaw plans/packages up to October 15, 2014 and accruing into the future.

56. Prior to October 16, 2014, ABACUS and BOERBAITZ had an agreement in place that required ABACUS to pay a 40-percent (40%) commission to BOERBAITZ for the sales, and license agreement sales, of AbacusLaw that BOERBAITZ secured with ABACUS's customers.

57. As of October 16, 2014, ABACUS still owed BOERBAITZ certain commission payments for the sales, and license agreement sales, of AbacusLaw, and ABACUS has refused to pay all BOERBAITZ's said sales commissions.

58. Accordingly, once BOERBAITZ has received and reviewed an accurate and complete accounting from ABACUS (which he has repeatedly requested), BOERBAITZ reserves the right to amend this Complaint to include BOERBAITZ's unpaid earned and/or owed sales commissions for sales, and license agreement sales, of AbacusLaw, that BOERBAITZ secured with ABACUS's customers, up to October 15, 2014 and accruing into the future.

59. Prior to October 16, 2014, ABACUS and BOERBAITZ had an agreement in place that required ABACUS to pay royalty commissions on BOERBAITZ's non-discounted and non-gifted RULES sold to ABACUS's customers before said termination date, and ABACUS has refused to pay all BOERBAITZ's said royalty commissions owed and accruing into the future.

60. Accordingly, once BOERBAITZ has received and reviewed an accurate and complete accounting from ABACUS (which he has repeatedly requested), BOERBAITZ reserves the right to amend this Complaint to include BOERBAITZ's unpaid royalty commissions on his non-discounted and non-gifted RULES sold to ABACUS's customers before said termination date up to October 15, 2014 and accruing into the future.

61. In the October 10, 2014 e-mail to BOERBAITZ, referenced above, and in other correspondence, spreadsheets, and communications, ABACUS's CEO attempted a baseless subterfuge that BOERBAITZ was not owed any royalty commissions as to any of BOERBAITZ's RULES that ABACUS had used, sold, discounted, gifted, distributed, reproduced, updated, and/or modified, stating: "You (BOERBAITZ) were receiving other sales commissions that were not earned by you to compensate.", referring either to the up front, added per RULE set creation and/or updates fees that BOERBAITZ charged ABACUS, or to the forty-percent (40%) sales commissions for selling/licensing AbacusLaw to customers, either of which ABACUS was required to pay BOERBAITZ in addition to the royalty commissions ABACUS owed him for his RULES.

62. However, 16 years of sales commissions, royalty commissions and per RULE set creation and/or updates fees checks issued by ABACUS, accounting spreadsheets/reports, the course and conduct between the parties, numerous e-mails, and other evidence overwhelmingly support that prior to October 16, 2014, BOERBAITZ and ABACUS agreed that in addition to the royalty commissions and the forty-percent (40%) sales commissions on the sales/leasing of AbacusLaw, ABACUS was also required to pay additional up front fees to BOERBAITZ as follows:

////

a.) the amount of $500 per RULE set creation and/or updates in each of the following five states: California, New York, Florida, Texas, and Illinois, on each occasion that BOERBAITZ created and/or updated the RULE sets which ABACUS sold;

b.) the amount of $200 fees per RULE set creation and/or updates for the balance of the states on each occasion that BOERBAITZ created and/or updated the RULE sets which ABACUS sold; and

c.) the amount of $200 per RULE set for any other RULE sets BOERBAITZ created and/or updated which ABACUS sold.

63. Accordingly, once BOERBAITZ has received and reviewed an accurate and complete accounting from ABACUS (which he has repeatedly requested), BOERBAITZ reserves the right to amend this Complaint to include BOERBAITZ's said unpaid RULE sets creation and update fees.

64. After BOERBAITZ's numerous unanswered requests to ABACUS to provide an accounting of, and make payment regarding, the royalty commissions and sales commissions ABACUS owed BOERBAITZ, 67 days after October 16, 2014, ABACUS sent BOERBAITZ a partial payment of $6,886.38 on December 23, 2014, unaccompanied by any proper accounting or documentation, and as such this partial payment should be credited against any damages ABACUS owes BOERBAITZ.

IV.

**BOERBAITZ's FIFTH CAUSE OF ACTION,**

**QUANTUM MERUIT**

65. BOERBAITZ repeats, realleges, and incorporates herein by this reference each and every allegation set forth in paragraphs 1-64 as though fully incorporated herein.

66. Prior to and after October 15, 2014, ABACUS used BOERBAITZ's RULES to enhance and market some or all of its AbacusLaw products, packages, and VIP Plans to its customers.

////

67. As a result, ABACUS has been unjustly enriched through marketing BOERBAITZ's RULES as part of its own AbacusLaw products, packages, and VIP Plans sold after October 15, 2014, for which ABACUS has not paid BOERBAITZ the proper amounts or nothing at all.

68. BOERBAITZ is entitled to payment by ABACUS of ABACUS's unjust enrichment attributable to its pre- and post-October 15, 2014 sales, and license agreement sales, of its AbacusLaw products, packages, and VIP Plans that included BOERBAITZ's RULES, and such unjust enrichment is fairly estimated at fifty-percent (50%) of ABACUS's proceeds derived from such sales.

## DEMAND FOR JURY TRIAL

69. Plaintiff BOERBAITZ demands trial by jury of all issues so triable.

## PRAYER

WHEREFORE, Plaintiff BOERBAITZ respectfully requests that this Court enter judgment in his favor and against ABACUS and DOES 1-21, where and when applicable, as follows:

(1) That the Court enter judgment against Defendants, that Defendants have:
    a. infringed BOERBAITZ's rights in federally registered and pending-registration copyrights; and
    b. otherwise injured the commercial reputation, goodwill, and business of BOERBAITZ by the acts and conduct of Defendants, as set forth in this Complaint.

(2) That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, partners, licensees, divisions, affiliates, and all others in active concert or participation with any Defendants, be enjoined from selling, discounting, gifting, utilizing, distributing, reproducing, updating, modifying, copying, posting, distributing, uploading or downloading, transferring by way of the internet, storing or transferring the RULES in any and all ways now

known or hereinafter devised, or otherwise making any other infringing use or infringing distribution of BOERBAITZ's RULES, both in connection with ABACUS's VIP Plan packages and/or individual or independent sales/licenses, and new and/or updated RULES, and that Defendants also shall destroy all copies of BOERBAITZ's RULES that Defendants possess on any computer hard drive, server, or other storage devices now known or hereinafter devised, and destroy all copies of the RULES transferred onto any physical medium or device in Defendants' possession or control now known or hereinafter devised;

(3) That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a), impounding all infringing copies of BOERBAITZ's RULES or materials which are in Defendants' possession or under their control;

(4) That the Court order Defendants to pay BOERBAITZ the following damages according to proof regarding Defendants' using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying BOERBAITZ's RULES after October 15, 2014:

    a.) From the date of October 16, 2014 and accruing until the date ABACUS ceases the using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES, ABACUS is liable to BOERBAITZ for copyright infringement under 17 U.S.C. § 501, *et seq.,* for any and all of BOERBAITZ's actual losses and damages; ABACUS's additional profits pursuant to 17 U.S.C. § 504(b), *et seq.*; ABACUS's unjust enrichment; damages due to injury that ABACUS caused to BOERBAITZ's commercial reputation and goodwill; and recovery of ABACUS's illicit intangible gain in enhanced goodwill, arising out of ABACUS's wrongful conduct.

b.) From the date of October 16, 2014 and accruing until the date ABACUS ceases its contributory copyright infringement in contributing to the unauthorized using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES, that ABACUS is liable to BOERBAITZ for contributory copyright infringement under 17 U.S.C. § 501, *et. seq.*, for any and all of BOERBAITZ's actual losses and damages; ABACUS's additional profits pursuant to U.S.C. § 504(b), *et seq.*; ABACUS's unjust enrichment; damages due to injury that ABACUS caused to BOERBAITZ's commercial reputation and goodwill; and recovery of ABACUS's illicit intangible gain in enhanced goodwill, arising out of ABACUS's wrongful conduct; and

c.) From the date of October 16, 2014 and accruing until the date ABACUS ceases its vicarious copyright infringement resulting from the unauthorized and vicarious using, selling, discounting, gifting, distributing, reproducing, updating, and/or modifying of BOERBAITZ's RULES, that ABACUS is liable to BOERBAITZ for any and all of BOERBAITZ's actual losses and damages; ABACUS's additional profits pursuant to U.S.C. § 504(b), *et seq.*; ABACUS's unjust enrichment; damages due to injury that ABACUS caused to BOERBAITZ's commercial reputation and goodwill; and recovery of ABACUS's illicit intangible gain in enhanced goodwill, arising out of ABACUS's wrongful conduct.

(5) An award of ABACUS's unjust enrichment of fifty-percent (50%) of ABACUS's proceeds according to proof from any post-October 15, 2014 sales/licenses of AbacusLaw that included BOERBAITZ's RULES, as said

inclusion enhanced the value and marketability of ABACUS's AbacusLaw products sold/licensed;

(6) An award of breach of contract damages according to proof against ABACUS, to include ABACUS's payment to BOERBAITZ for any:

    a.) unpaid earned and/or owed royalty commissions that take into account ABACUS's unauthorized discounting and gifting of BOERBAITZ's RULES in connection with ABACUS's VIP 36 and any other applicable plans/packages up to October 15, 2014 and accruing into the future;

    b.) unpaid earned and/or owed sales commissions for sales, and license agreement sales, of AbacusLaw that BOERBAITZ secured with ABACUS's customers up to October 15, 2014 and accruing into the future;

    c.) unpaid royalty commissions on any non-discounted and non-gifted RULES sold to ABACUS's customers before said termination date up to October 15, 2014 and accruing into the future;

    d.) unpaid total amount of the up front $500 per RULE set creation and/or updates fees in each of the following five states: California, New York, Florida, Texas, and Illinois, on each occasion that BOERBAITZ created and/or updated the RULE sets which ABACUS sold;

    e.) unpaid total amount of the up front $200 per RULE set creation and/or updates fees for the balance of the states on each occasion that BOERBAITZ created and/or updated the RULE sets which ABACUS sold; and

    f.) unpaid total amount of the up front $200 per RULE set creation and/or updates fees for any other RULE sets BOERBAITZ created and/or updated which ABACUS sold.

////

(7) An award to BOERBAITZ of his costs, disbursements, and reasonable attorney's fees expended in this action;

(8) An award of a credit in the amount of $6,886.38 that ABACUS paid BOERBAITZ on December 23, 2014 as ABACUS's partial payment made toward BOERBAITZ's damages; and

(9) An award of such other and further relief as the Court deems just and proper.

DATED this 29th day of October, 2015.

Respectfully submitted,

LAW OFFICE OF SHANE A. REED, P.C.

By: /s/ *Shane A. Reed*
Shane A. Reed, CSB #158382
Attorney for Plaintiff